UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED
98 OCT 30 PM 4:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

RAY HODGES,  )
    Plaintiff,  )
vs.  ) Civil Action No. CV-96-S-0565-NE
SOUTH CENTRAL BELL TELEPHONE COMPANY,  )
    Defendant.  )

ENTERED
OCT 30 1998

## MEMORANDUM OPINION

Plaintiff Ray Hodges brings this action seeking declaratory and injunctive relief, back pay, loss of employment benefits, and other damages, against defendant South Central Bell Telephone Company ("Bell"), alleging that Bell terminated his employment because of his alcoholism and his depression. Hodges also claims Bell refused him reasonable accommodation by repeatedly denying him medical leave and in-patient treatment. Hodges invokes this court's jurisdiction under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601-2654. The action presently is before the court on defendant's motion for summary judgment. Upon consideration of the pleadings, briefs, and evidentiary submissions, the court concludes the motion is due to be granted.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. ..." Rule 56(c), Fed. R. Civ. P. The movant bears the initial burden of showing the court, by reference to materials on file, that no genuine issues of material fact exist to be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The moving party discharges this burden by "showing" or "pointing out" to the court that there is an absence of evidence to support the non-moving party's case. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995)(per curiam). Rule 56 permits the movant to discharge this burden with or without supporting affidavits. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2553. When the moving party has discharged its burden, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *Jeffery*, 64 F.3d at 593.

2

In deciding whether the moving party has met its burden, the court is obligated to draw all inferences from the evidence presented in the light most favorable to the non-movant and, also, to resolve all reasonable doubts in that party's favor. *Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Inferences in favor of the non-movant are not unqualified, however. "Mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted). Moreover, evidence that is merely colorable, *see Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988), conclusory, *see Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989), or conjectural, does not create a genuine issue of material fact.

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment. *Augusta Iron & Steel Works v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988). A "genuine" dispute about a material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Jeffery*, 64 F.3d at 594 (quoting *Anderson v.*

3

*Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). The bottom line is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. at 2512.

With the foregoing standards in mind, this court now will summarize the undisputed facts, or, if disputed, shall state them in a manner most favorable to the plaintiff.

## II. FACTS

Plaintiff Dallas Ray Hodges was employed by Bell from March 29, 1965 until the day of termination, June 15, 1994. At all times relevant to this action, Hodges worked as an electronic technician in Athens, Alabama.

### A.  Initial Misconduct Resulting In Suspension

During the summer of 1993, Hodges' supervisor, McArthur Lindley, recognized that Hodges often was not where he was supposed to be while on the job. This realization prompted a security investigation that discovered Hodges regularly was driving his marked company vehicle to a brokerage house during working hours.

Before the investigation had been completed, however, Hodges contacted Lindley to disclose his problems with depression, and to inform Lindley he would seek treatment. Furthermore, in this

4

conversation, Hodges confessed to his detours to the brokerage house, explaining that he could not control his urge to gamble. Hodges maintains that this call coinciding with the investigation was coincidental, and that he was unaware of the investigation. (Plaintiff's opposition to defendant's motion, Doc. No. 31, at 2 n.1.)

The parties dispute whether Lindley suggested in this initial conversation or after Hodges' subsequently sought help at Bradford Parkside Hospital, that Hodges seek treatment at Bell's expense through the BellSouth Employee Assistance Program ("EAP"). Nevertheless, Hodges eventually received treatment through the EAP, attending four or five sessions with various psychiatrists.

On August 4, 1993, shortly after Hodges' conversation with Lindley, Hodges was interviewed by Bell's security manager. Hodges again admitted to frequent visits to the brokerage house, where he spent time buying and selling futures on the commodity market while he should have been conducting company business. Moreover, Hodges admitted to falsifying work reports, indicating he had been working during the time he was at the brokerage house. Hodges completed a written statement acknowledging and detailing his misconduct. (Plaintiff's deposition, exhibit 1.) In the statement, he attributes his actions to a "gambling problem" for which he was

5

receiving treatment through the EAP. (*Id.*) In his deposition, Hodges says he knew Bell might fire him for such misconduct. (*Id.* at 38, 41-42, 44.)

Bell suspended Hodges for a month, from August 25, 1993, through September 24, 1993. (*Id.* at 42.) The suspension notice cited four reasons for the disciplinary action: (1) "falsifying time reports and other company records"; (2) "using his company vehicle for personal business"; (3) "being off the job when he was being paid to work"; and (4) "using the company phone for an extraordinarily [*sic*] amount of personal business." (Plaintiff's deposition, exhibit 1.) The notice advised Hodges that it served as "a final warning and that any recurrence of these problems would result in severe disciplinary action, probably termination." (*Id.*) In addition, Hodges' supervisor told Hodges he would be fired if he engaged in similar misconduct in the future. (*Id.* at 50-51, 94.)

After the counseling sessions, Hodges felt able to return to work. Beginning in April 1994, Hodges had a new supervisor, Raymond Willoughby. Willoughby was aware of Hodges' prior suspension, but unaware Hodges had received treatment for depression. Willoughby made no complaints about Hodges' job

6

performance. Willoughby had noticed Hodges being away from the job, however, and prepared to discuss the situation with Hodges.

**B. Subsequent Misconduct Resulting In Termination**

At this time, Willoughby was contacted by the security manager and informed that surveillance had found Hodges at the brokerage house during business hours, and that there was a history of this activity. In an interview on June 6, 1994, Hodges admitted to having repeated his prior misconduct. He admitted falsifying work reports in attempts to conceal his detours to the brokerage house where he conducted personal business on the commodities market. Again, Hodges attributed his actions to a gambling addiction, mentioning alcoholism only by way of analogy. (Plaintiff's deposition, exhibit 3.) Shortly after this interview, Hodges checked into an in-patient treatment program.

On June 15, 1994, fewer than two weeks later, Bell, through Willoughby, terminated Hodges' employment. Willoughby explained to Hodges the reasons for the termination: "falsifying time reports and other company records, for using Company vehicles for personal business, for being off the job when ... being paid to work, and for using Company telephones for an extraordinary amount of personal business." (Plaintiff's deposition, exhibit 7.)

7

Following the termination, Hodges informed Bell of his drinking problem for the first time. (*Id.* at 30-31.) Prior to his discharge, Hodges had concealed this problem from Bell. (*Id.*)

C. **Charge of Discrimination**

Hodges filed a charge of discrimination with the Equal Employment Opportunity Commission on December 6, 1994. (*See* Affidavit of Allen Gosa and exhibit A, Doc. No. 41).[1] Hodges filed an amended charge on April 22, 1995, claiming he was discriminated against because of his disabilities, in violation of the ADA. (Plaintiff's Supplementary Evidentiary Statement, Doc. No. 32, Exhibit B.)

### III. DISCUSSION

A. **Claim Under The ADA**

Congress enacted the Americans with Disabilities Act of 1990 (ADA) for the stated purpose of providing "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C.

---

[1] Although plaintiff cannot produce the original charge of discrimination, he ultimately produced the affidavit of an EEOC official, Allen Gosa, who has reviewed his claim and the EEOC's record of the charge. (*See* Doc. No. 41, exhibit 1.) The EEOC's record indicates plaintiff initially filed a charge of discrimination on December 6, 1994. The amended charge of discrimination filed April 22, 1995 also reflects an original filing on December 6, 1994. (Plaintiff's Supplementary Evidentiary Statement, Doc. No. 32, Exhibit B.) This evidence satisfies the court that Hodges filed a timely charge of discrimination.

8

§ 12101(b)(1). Congress sought "to assure equality of opportunity, full participation, independent living, and economic self-sufficiency." 42 U.S.C. § 12101(a)(8). To achieve those purposes, the Act commands that

> no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). The Act imposes an affirmative duty on employers to provide reasonable accommodations for disabled individuals. Thus, the term, "discrimination" is defined broadly, to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ... unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A).

Hodges bears the burden of proving by a preponderance of the evidence that defendant intentionally discriminated against him because of his disability. That can be done either by direct or circumstantial evidence. When, as here, the evidence of intent is circumstantial in nature, the Supreme Court has prescribed an analytical process to evaluate the strength of plaintiff's proof.

9

In three decisions rendered over two decades, the Supreme Court "developed a formula for shifting evidentiary burdens between plaintiff and defendant which permits the establishment of intentional discrimination without direct evidence of unlawful motivation." A.C. Modjeska, *Employment Discrimination Law* § 1:09, at 39-40 (3d ed. 1996). The order and allocation of burdens of proof, persuasion, and production were first defined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), then elaborated in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093-94, 67 L.Ed.2d 207 (1981), and finally elucidated in *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The analytical structure developed by that trilogy has three steps, the ultimate goal of which is that of "progressively ... sharpen[ing] the inquiry into the elusive factual question of intentional discrimination." *St. Mary's Honor Center*, 509 U.S. at 506, 113 S.Ct. at 2746 (quoting *Burdine*, 450 U.S. at 255 n.8, 101 S.Ct. at 1094 n.8).[2]

---

[2] Although the Eleventh Circuit has not explicitly held to the following effect, it nevertheless is widely agreed that the burden-shifting analysis expressed in *McDonnell Douglas* and its progeny, and applied in Title VII disparate treatment cases, is similarly followed in deciding cases brought under the ADA. *See McNemar v. The Disney Store, Inc.*, 91 F.3d 610, 619 (3d Cir. 1996), *cert. denied*, ___ U.S. ___, 117 S.Ct. 958 (1997); *Rizzo v. Children's World*

10

The first step is satisfied when the plaintiff establishes a *prima facie* case. To establish a *prima facie* case of discrimination under the ADA, a plaintiff must demonstrate: (1) that he has a disability; (2) that he is a "qualified individual" (*i.e.*, that he can perform the essential functions of the job position he holds or seeks, with or without reasonable accommodation being made by the employer[3]); and, (3) that he was discriminated against because of his disability. *See* 42 U.S.C. § 12132; *Pritchard v. Southern Company Services*, 92 F.3d 1130, 1132 (11th Cir. 1996). In addition, a plaintiff must show that the employer had actual or constructive knowledge of his disability. *Gordon v. E.L. Hamm & Associates, Inc.*, 100 F.3d 907, 910 (11th Cir. 1996).

---

Learning Centers, Inc., 84 F.3d 758, 761 n.2 (5th Cir. 1996), *cert. denied*, __ U.S. __, 117 S.Ct. 958 (1997); *see also* Moses v. American Nonwovens, Inc., 97 F.3d 446, 447 (11th Cir. 1996), *cert. denied*, __ U.S. __, 117 S.Ct. 964 (1997)(implicitly using burden-shifting framework); Johnson v. Boardman Petroleum, Inc. 923 F. Supp. 1563 (S.D. Ga. 1996); Lewis v. Zilog, Inc., 908 F. Supp. 931 (N.D. Ga. 1995).

[3] *See* 42 U.S.C. § 12111(8) (defining "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires"). *See also* 29 C.F.R. § 1630.2(m) ("Qualified individual with a disability means an individual with a disability who satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires, and who, with or without reasonable accommodation, can perform the essential functions of such position.").

11

At the second stage of analysis, the burden of production shifts to defendant to rebut the presumption of intentional discrimination thus raised by a *prima facie* case, by articulating legitimate, nondiscriminatory reasons for the contested employment action. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093.

If defendant does so, then in the final step of the inquiry plaintiff must show by a preponderance of the evidence that defendant's stated reasons are mere pretexts for unlawful, discriminatory motives. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093.

### 1. The *prima facie* case

Bell contests the first and third elements of Hodges' *prima facie* case.

#### a. Is plaintiff "disabled"?

The first element plaintiff must establish as part of his *prima facie* case is that he has a "disability." The ADA defines the concept of "disability" in a manner that includes any individual:

(A) who has a *physical or mental impairment* that *substantially limits* one or more of the *major life activities* of such individual, or

(B) who has a *record of* such an impairment, or

12

(C) who is *regarded as having* such an impairment.

*See* 42 U.S.C. § 12102(2).

Hodges alleges discrimination based on his disabilities of alcoholism and depression. However, much of the evidence refers to his problems with gambling, *i.e.*, trading futures on the commodities market. The rub lies in the fact that "compulsive gambling" is expressly excluded from the ADA: see 42 U.S.C. § 12211(b), providing that: "Under this chapter, the term "disability" shall not include ... <u>compulsive gambling</u>, kleptomania, or pyromania." (Emphasis supplied.) Depression and alcoholism, on the other hand, can qualify as "impairments" under the ADA. *See Pritchard v. Southern Co. Services*, 92 F.3d 1130, 1133, *modified*, 102 F.3d 1119 (11th Cir, 1996) (depression); *Cook v. Rhode Island Dep't. of Mental Health, Retardation, and Hospitals*, 10 F.3d 17, 24 (1st Cir. 1993) (alcoholism).[4]

---

[4] Hodges appears to abandon alcoholism as a basis of his claim for discrimination. (*See* Plaintiff's Opposition to Defendant's Motion for Summary Judgment, Doc. No. 31.) The court notes that Hodges concealed his problems with alcohol from Bell (plaintiff's deposition at 30-31), precluding a finding of discrimination, at least, for failure to accommodate based on this disability. *See*, *e.g.*, 29 C.F.R. 1630.9; *see also Miller v. National Casualty Co.*, 61 F.3d 627, 629-30 (8th Cir. 1995). Nevertheless, the analysis for this disability otherwise is identical to the analysis for discrimination because of Hodges' depression.

13

b.  **Was plaintiff fired because of his disability?**

In order to satisfy the final prong of his *prima facie* case, Hodges must establish that he suffered an adverse employment action <u>because of</u> his disability. The termination of Hodges' employment unquestionably was an "adverse employment action." Hodges now must demonstrate a causal connection between that action and his disability.

Hodges cannot prove he was fired because of his depression or alcoholism. The undisputed evidence shows Hodges was terminated for his misconduct: *i.e.*, "falsifying time reports and other company records, for using Company vehicles for personal business, for being off the job when ... being paid to work, and for using Company telephones for an extraordinary amount of personal business." (Plaintiff's deposition, exhibit 7.) In fact, Bell had given Hodges a warning prior to the misconduct prompting the termination, in which Bell advised Hodges that "[a]ny recurrence of these problems [will] result in severe disciplinary action, <u>probably termination</u>." (Plaintiff's deposition, exhibit 2.)

Hodges now claims this warning is <u>direct</u> evidence that Bell discriminated against him because of his depression. This argument fails. Bell has the right to fire Hodges for the reasons it

14

stated. *See, e.g., Severino v. North Fort Myers Fire Control District*, 935 F.2d 1179, 1183 (11th Cir. 1991) (finding under the Rehabilitation Act that employers may direct appropriate discipline at a handicapped individual); *Coaker v. Home Nursing Services, Inc.*,1996 WL 316739, at *17-*18 (S.D. Ala. 1996); *cf.* 42 U.S.C. § 12114(c)(4) (an employer "may hold an employee ... who is an alcoholic to the same standards of behavior that such entity holds other employees, even if any unsatisfactory behavior is related to the [alcoholism]"). Furthermore, Hodges admitted to the misconduct giving rise to the suspension and the subsequent termination.

In addition, defendant satisfies this court that Hodges' depression was a result of, and not the cause of, his trading on the commodities market. Hodges' work-related problems thus stemmed from his "gambling," not from his depression. This fact supports the finding that the termination of Hodges' employment for this misconduct had no direct link to Hodges' disability.

Hodges argues further that the fact he was in a substance abuse center at the time he was informed of the termination serves as evidence of discrimination. The only persuasive evidence of a causal nexus plaintiff has offered is the temporal proximity between these events: within two weeks. Hodges entered treatment

15

just *after* the second interview, however, during which Hodges admitted he was guilty of the type of misconduct for which he already had been suspended (and warned probably would lead to termination). The timing of the investigation and its findings, *i.e.*, before Hodges entered treatment, negate any inference of a discriminatory motive for the termination. *See Stewart v. Happy Herman's Cheshire Bridge*, 117 F.3d 1278, 1287 (11th Cir. 1997). Although the temporal proximity may suffice for a claim of retaliation, *see, e.g., Donnellon v. Fruehauf Corporation*, 794 F.2d 598, 601 (11th Cir.1986) (finding the time between filing discrimination complaint and plaintiff's discharge sufficient to establish causation), the court finds it insufficient to establish a causal connection for this claim.[5]

### c. Did defendant fail to reasonably accommodate plaintiff?

Hodges claims Bell failed to accommodate him because they refused him in-patient treatment through the company program, EAP. To establish discrimination for failure to accommodate, Hodges must

---

[5] The court follows its earlier cases and finds the FMLA claim more analogous to a claim for retaliation, sufficiently analogous to allow the proximity of the events to establish a causal connection for Hodges' *prima facie* case. *See* Part III.B.1 *infra*.

Even if the court were to find this evidence sufficient to establish a *prima facie* case for the ADA claim, the court's analysis of Bell's legitimate nondiscriminatory reasons for the termination would mirror this analysis for the FMLA claim. *See* Part III.B.2 *infra*.

16

show he requested an accommodation, and that the requested accommodation was reasonable. *Willis v. Conopco, Inc.*, 108 F.3d 282, 285-86 (11th Cir. 1997). Hodges admits he never requested a leave of absence, never applied for disability leave, and never sought to use his vacation or sick leave in order to obtain this treatment. (Plaintiff's deposition at 99-100.)

Moreover, Bell was very accommodating of Hodges: first, allowing Hodges to return to work after the initial misconduct, *see Golson-El Runyon*, 812 F. Supp. 558, 561 (E.D. Pa. 1993), *aff'd*, 8 F.3d 811 (3rd Cir. 1993) (finding "Last Chance Agreement" to be a "prior accommodation to alcoholism"), and, second, providing Hodges with out-patient psychiatric services at company expense, which Hodges voluntarily accepted and found effective (Plaintiff's deposition at 93-95). *See Stewart*, 117 F.3d at 1285-86 (11th Cir. 1997) (affirming summary judgment and holding that "an employer is not required to accommodate an employee in any manner in which that employee desires[;] ... [a disabled employee] is not entitled to the accommodation of her choice"); *see also Crumpton v. St. Vincent's Hospital*, 963 F. Supp. 1104, 1114 (N.D. Ala. 1997) ("The accommodation does not have to be the 'best' accommodation possible, as long as it is sufficient."). Furthermore, Bell cannot

17

be held liable for failure to reasonably accommodate Hodges' alleged alcoholism, because Hodges concealed his disability. *See, e.g.,* 29 C.F.R. 1630.9; *see also Miller v. National Casualty Co.,* 61 F.3d 627, 629-30 (8th Cir. 1995).

Bell did not discriminate against Hodges by failing to reasonably accommodate him. Hodges cannot establish that Bell terminated his employment because of this disability. Hodges thus fails to establish a *prima facie* case of discrimination under the ADA. Therefore, summary judgment is appropriate for this claim.

### A.  Claim Under The FMLA

In addition to his ADA claims, Hodges alleges Bell terminated him because he took a leave of absence, in violation of the Family and Medical Leave Act.

#### 1. *Prima facie* case

In order to establish a *prima facie* case, Hodges must show: (1) he availed himself of a right protected by the FMLA; (2) he then suffered an adverse employment decision; and (3) a causal connection exists between events (1) and (2). *See Dollar v. Shoney's, Inc.,* 981 F. Supp. 1417, 1420 (N.D. Ala. 1997). As for the ADA claim, Hodges may prove his FMLA case through either direct evidence or circumstantial evidence. Also similar to the ADA

18

analysis, the same burden-shifting framework applies, if Hodges proffers circumstantial evidence. *See id.* at 1419-20 (collecting cases).

Hodges can establish a *prima facie* case based upon circumstantial evidence.[6] First, Hodges left work to receive in-patient treatment at Bradford Parkside Hospital just after the interview regarding his second episode of misconduct. Hodges even admits Bell referred him to this hospital. Second, Hodges was fired. Third, the temporal proximity between the adverse action and Hodges' taking leave, within two weeks, creates an inference of discrimination for a claim bottomed upon the FMLA. *See id.* at 1420 (and cases cited therein).

### 2. Legitimate nondiscriminatory reasons

Bell cites Hodges' repeated and admitted misconduct as the reasons for his termination. These legitimate nondiscriminatory reasons for the termination of Hodges' employment stand unrebutted. Hodges does not dispute that Bell had begun investigating Hodges' misconduct before he took leave and sought in-patient treatment. Thus the undisputed facts negate any inference of discrimination.

---

[5] Hodges characterizes as direct evidence of discrimination, Bell's warning of termination if Hodges engaged in misconduct similar to that for which Bell suspended Hodges. As the court stated in the ADA analysis, this argument is unavailing.

19

See, e.g., *Beno v. United Telephone Company of Florida*, 969 F. Supp. 723, 726 (M.D. Fla. 1997) (granting summary judgment where employer began investigating plaintiff for misconduct before plaintiff requested FMLA leave); *Turbeville v. Personal Finance Corp.*, 1996 WL 407571, at *3 (N.D. Miss. 1996) (dismissing FMLA claim because "wheels of termination were put in motion before request for leave").

Therefore, summary judgment is appropriate for Hodges' claim under the FMLA.

## IV. CONCLUSION

For the foregoing reasons, Bell's motion for summary judgment is due to be granted. An order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this **30th** day of October, 1998.

_____
United States District Judge

20